[Civ. No. 1874.   Third Appellate District.—November 7, 1918.]

T. M. SMITH, Respondent, v. CHARLES L. SIMPSON, Appellant.

PROMISSORY NOTE—DEFENSE OF PAYMENT—FINDINGS FOR PLAINTIFF SUSTAINED BY EVIDENCE.—In this action to recover a balance alleged to be due on a promissory note, findings in favor of plaintiff are held to be sustained by the evidence.

APPEAL from a judgment of the Superior Court of Glenn County.   Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, for Appellant.

Daniel A. Ryan, for Respondent.

HART, J.—It is alleged in the complaint that, on January 1, 1907, defendant made, executed, and delivered to plaintiff a promissory note (a copy of which is set forth) for the sum of $5,605.32, payable twelve months after date, with interest at five and one-half per cent; that, on the fifth day of February, 1908, defendant paid upon said note the sum of $2,802.66, and that no other payments have been made.

The answer is that said payment of $2,802.66 was ''in full payment of the promissory note; . . . and that the said plaintiff accepted said sum from the defendant in full satisfaction and discharge of the said promissory note, . . . and that thereupon the said plaintiff delivered to the defendant the said promissory note, and that the defendant is now the owner and holder of the same.''

The cause was tried before the court, without a jury, and the findings were: That the note in question was executed and the payment of $2,802.66 made thereon as set forth in the complaint; ''that said payment was not in full payment of the said promissory note and plaintiff did not accept nor agree to accept said sum in full satisfaction or discharge of the said note; that the defendant is in the possession of but is not the owner of the said promissory note; that plaintiff is the owner and entitled to the possession of the said note; that at the time of the said payment and in consideration thereof, and in payment of the balance due upon said promissory note, to wit, $2,802.66, plaintiff agreed to accept and defendant agreed to make and give his, defendant's, two certain promissory notes, to wit, one to John Curry for $1,000, payable to said John Curry, one to T. M. Smith, plaintiff herein, for $1,802.66, payable to said plaintiff; that defendant failed and refused to make or give said notes or either of them in accordance with said agreement or at all; that there is now due and unpaid from defendant to plaintiff on said promissory note as principal the sum of $2,802.66,'' with interest at the rate of five and one-half per cent from June 11, 1909. Judgment

was in favor of plaintiff for the sum of $3,904.74, from which judgment defendant prosecutes this appeal.

The sole contention advanced by the appellant is that the findings are not supported by the evidence and the case of *Field* v. *Shorb,* 99 Cal. 661, [34 Pac. 504], and other cases, are cited to support his position. In the Shorb case the court said: ''We are adverse to holding that a finding by a jury or trial court on an issue of fact is not warranted by the evidence, whatever we might think as to its preponderance, where there is presented a fair, reasonable ground for a difference of opinion, and where a conclusion either way could not be considered as the necessary result of the exercise of an unsound judgment. But where the great current of the evidence is against the verdict, and we cannot escape the conviction that it is wrong, we should not be deterred from setting it aside by the contention that one or two general statements or assertions of one or two witnesses bring the case within the rule which governs in cases where there is a *material* 'conflict of evidence.' And in the case at bar we cannot resist the conclusion that the evidence is insufficient to support the finding of the unsoundness of the mind of the deceased on July 3, 1890.''

An examination of the evidence in the present case has not convinced us that it comes within the ruling of the Shorb case. The ''great current of the evidence'' does not appear to be against the findings herein, as we shall presently show. The only question which could arise here, in considering the evidence, is whether the testimony from which the findings were evidently educed is entitled to such credit and weight as to justify its acceptance as proof of the ultimate fact, and this question was for the trial court to determine and which it has determined against the defense interposed by the defendant. While we think that it is very clear, so far as a reviewing court is able to judge, that the preponderance of the evidence is in favor of the conclusion reached by the trial court as evidenced by its findings of fact, the least that can be said of the evidence as a whole is that there exists therein a substantial conflict, and that it, therefore, presents ''a fair, reasonable ground for a difference of opinion'' as to its effect, and that ''a conclusion either way could not be considered as the necessary result of the exercise of an unsound judgment.''

From the testimony of the plaintiff it appears that the plaintiff was at one time a partner in the sheep business with Mr. Curry, the father of the wife of the defendant, but at the time of the transaction to which we are about to refer the said Curry was not living. It may further be stated that the plaintiff is related in some way to Mrs. Simpson.

In the summer of 1903, Simpson and his wife, desiring to purchase a tract of land adjoining their land, and not having the money with which to make the purchase, called on the plaintiff and requested of him a loan of the necessary amount, which was the sum of four thousand five hundred dollars. The plaintiff replied that he could procure the money at the Bank of Chico, in the city of Chico, and the Simpsons said that all they needed at that time was the sum of one thousand dollars. The plaintiff subsequently obtained said sum, and, as directed by the Simpsons, sent the money to a "Mr. Freeman." Plaintiff gave his individual note to the bank for the one thousand dollars. Later in the same year, the plaintiff made the defendant an additional loan, amounting to the sum of three thousand five hundred dollars, which sum was also forwarded by the Bank of Chico in the name of the plaintiff to the "Mr. Freeman" above referred to. Thereafter (either in the month of December, 1903, or January, 1904), plaintiff called at the home of the Simpsons, and on that occasion the defendant executed and delivered to plaintiff his promissory note for the sum of four thousand five hundred dollars, payable one year after date, with interest at the rate of five and a half per cent. Of the last sum of money loaned to the defendant by the plaintiff, three thousand three hundred dollars was obtained by the latter from W. H. Curry, a brother of Mrs. Simpson, and then a business partner of the plaintiff. The note was made to the plaintiff and said Curry. When the note matured, the defendant made a payment thereon and gave a new note for the balance. And so the transactions between the plaintiff and the defendant were carried on from year to year—as the existing note matured, a new note was given and the old note surrendered to the defendant—until the fourth note for the sum of six thousand three hundred dollars or six thousand four hundred dollars was made and given to the plaintiff by the defendant. After the execution and delivery of the fourth note, the defendant made a payment thereon of the sum of $1,080, leaving a balance of $5,605,

for which a new note—the note in suit—was given. The plaintiff subsequently assigned the note to W. H. Curry, said assignment being in the following language, indorsed on the back of the note:

"I hereby assign this note for value received as security to the amount of $3770.00 to W. H. Curry.

"(Signed) T. M. SMITH."

It appears that, on the 18th of January, 1908, W. H. Curry sent the note, through the Bank of D. O. Mills & Co. at Sacramento, to the Bank of Willows for collection, and accompanying the note was the following instruction or direction to the Bank of Willows: "Note, Charles L. Simpson to T. M. Smith, $5602.32, which please deliver to Smith or Simpson on payment of ½—$2802.66, if paid on or before Jan. 23, 1908." The time for the payment of the $2,802.66 by Simpson to the bank was extended to the third day of February, 1908. Defendant paid said sum to the bank, the written acknowledgment of payment by the bank being dated February 5, 1908. Upon the said payment being made, the note in suit was delivered by the bank to the defendant.

The plaintiff testified that he never at any time had an understanding or agreement with Simpson or ever said to the latter's wife that he would surrender the note and call the transaction at an end if the defendant would pay two thousand eight hundred dollars on the note. He continued: "I put that indorsement (the assignment) there about a week or two after the note was made and I gave it into the possession of Mr. Curry. I didn't get it back afterward. The note does not belong to Mr. Curry. The payment indorsed on it of $2,802 was paid to Mr. Curry as part of the amount that I owed him. He got part of his money. Mr. Curry sent the note to the Bank of D. O. Mills through the Bank of Willows for collection and this $2,802 was paid. [The witness probably intended to say that the note was delivered to the D. O. Mills Bank, and by it sent to the Bank of Willows for collection, which was the fact.] He [Curry] sent it at my request. The reason I did this was because he wanted to get his money out of this note. He was going to bring suit against Mr. Simpson if it wasn't paid. The wife of Charles Simpson is a sister of Mr. Curry. They didn't want to pay Mr. Curry, as they had some grievance against him. . . . The instructions to the bank was that the note was to be delivered to Mr.

Simpson upon the payment of two thousand eight hundred dollars. The note was to be delivered to Simpson for him to make over a new note, which he did every year before that, so that whenever the notes became due he would make a new note and pay what he could on the original note. I didn't have any agreement with Simpson and his wife that in case they paid this money to Curry, this two thousand eight hundred dollars, that that was to end the whole transaction. Mr. Curry simply said if they would pay this two thousand eight hundred dollars and give him half the face of the note, why he would throw off his interest. In order to induce the Simpsons to pay the two thousand eight hundred dollars we threw off the interest due to date, so that we started in with a new principal of two thousand eight hundred dollars. The other two thousand eight hundred dollars, the one I am now suing for, was to draw interest and was to be paid either in cash or note. That was the understanding that we had. Mr. and Mrs. Simpson said: 'We will probably pay all of this note and won't give any more notes.' Mr. Simpson did not give any other note for the two thousand eight hundred dollars nor has it been paid. Mr. Simpson retained the note ever since he paid the two thousand eight hundred dollars to the Bank of Willows.''

Mrs. Simpson, wife of the defendant, testified that the plaintiff agreed to accept the $2,802 in full satisfaction of the note. She further testified that her father's estate had never been probated and expressed the *supposition* that a part of the money loaned to her husband by the plaintiff belonged to her father's estate. She appeared to have conceived an intense feeling of bitterness against her brother, W. H. Curry, and expressed to the plaintiff much indignation because he (Smith) had assigned the note to said Curry. She said to the plaintiff that the note never would be paid so long as W. H. Curry had any interest in it.

The daughter of Mr. and Mrs. Simpson testified that she heard Smith say to her mother that, if the defendant would pay one-half of what the note called for, he would cancel and deliver up the note to the defendant as fully satisfied.

John Curry, also a brother of Mrs. Simpson, testifying in rebuttal for the plaintiff, stated that a few days after February 21, 1909, he received a letter from Mrs. Simpson in which she said that they had paid W. H. Curry two thousand

eight hundred dollars on the note, and that "she would give me one thousand dollars and also Mr. Smith one thousand eight hundred dollars, which two thousand eight hundred dollars represented the balance of the note" in suit.   (It should here be explained that Smith testified that Mrs. Simpson insisted that John Curry was entitled to one thousand dollars of the two thousand eight hundred dollars which remained due on the note after the payment of one-half the note to W. H. Curry.)   While the fact, if it was a fact, that the estate of Mrs. Simpson's father was never probated, and that Mrs. Simpson believed that a portion of the money loaned to the defendant by the plaintiff, who, as seen, was a partner of her father during the latter's lifetime, came from her father's estate, is not material to the issues presented by the pleadings, yet it is not improper to state that John Curry, having been asked why he was to receive one thousand dollars of the two thousand eight hundred dollars remaining due on the note, and whether it was because he was led to believe that he was entitled to a part of his father's estate, answered: "No, sir, I don't know why it was.   I was not to get it because I was led to believe that I was entitled to part of my father's estate.   I don't know why it was.   I never had any conversation or discussion of any kind with Mr. or Mrs. Simpson in regard to my father's estate.   I don't know that my father had any estate.   I never learned after his death that he had an estate."

There was considerable other testimony given by the witnesses above named, but we have given herein a substantial statement of the important facts to which they testified. There is, as will be noted, no denial by the defendant that the note sued on was executed and delivered by him to the plaintiff for moneys loaned to him by the plaintiff, nor is there any denial that no other payment was made on the note than the sum of approximately two thousand eight hundred dollars, paid to the Bank of Willows and by the bank to W. H. Curry, as above shown.   The plaintiff's story of how the note came to be delivered to Simpson is not an unreasonable one. The written instruction from the Bank of D. O. Mills & Co. to the Bank of Willows was that, upon the payment of the two thousand eight hundred dollars, or one-half of the note, the note should be delivered either to Simpson or Smith.   This instruction was given at the request of Curry, who then held the note as collateral security, and Smith testified that the

note was so sent with his consent and by his request. This circumstance goes in corroboration of Smith's testimony that, the transactions between him and the defendant having covered a number of years, during which a number of different notes were from time to time made by the defendant and delivered to the plaintiff for the purpose of taking up and canceling a note previously made, the note in suit, if delivered to the defendant, should not by reason of that fact be regarded as satisfied, but should be supplied by the defendant by a new note for the balance due after the payment to Curry of the two thousand eight hundred dollars. But there is no necessity for an analysis of the evidence to show that the findings are sufficiently supported. The whole controversy hinges upon the solution of the question whether, as Mrs. Simpson and her daughter testified, the plaintiff agreed that he would deliver up the note to the defendant as fully paid upon the payment by the latter of one-half of what the note called for to Curry or to the Bank of Willows for him, and upon this question there is a decided conflict in the testimony, the plaintiff positively testifying that there was no understanding or agreement between him and the defendant or the latter's wife that the obligation of the note would be treated as extinguished upon the payment of one-half of the sum it called for, and Mrs. Simpson and her daughter flatly contradicting that testimony. As above stated, the plaintiff's testimony is not unreasonable upon its face, nor inherently improbable. The conflict thus produced was, of course, for the trial court to determine, and, having determined it against the defendant, we perceive no ground or reason for holding that the trial court's conclusion thereon was or is wrong. Thus it is plainly manifest, as declared in the outset of this opinion, that the case here is not one in which it may with justness be said that, as a matter of law, the "great current of the evidence is against the findings."

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 6, 1919.

Angellotti, C. J., Sloss, J., Melvin, J., Lawlor, J., and Lennon, J., concurred.